SYKES, Circuit Judge,
dissenting.
Yulia Abair, a Russian immigrant and registered nurse, made an unusual series of large cash deposits into her account at a bank near South Bend, Indiana. This attracted the attention of IRS agents and eventually the Department of Justice, but their investigation turned up no evidence of nefarious activity. Abair wasn’t evading taxes or laundering ill-gotten gains; she was buying a home and was having difficulty accessing funds in her Citibank Moscow account. To get around the problem, Abair resorted to the scheme my colleagues have described: She made repeated ATM withdrawals from her Russian bank account and deposited the cash with her local bank in a series of transactions just under the $10,000 threshold that triggers the bank’s reporting requirements for currency transactions. The withdrawals were legitimate, but the deposits landed Abair in big trouble.
The bank tellers told investigators that the money had a “musty,” “mildewy,” or “dirty” odor, as if it had been kept in a basement rather than freshly drawn from an ATM. Prosecutors inferred from the odd smell that the money must have come from an illegitimate source and brought the full force of the federal criminal law down on Abair. The U.S. Attorney’s Office in South Bend indicted her on eight counts of structuring a money transaction to avoid currency reporting requirements. See 31 U.S.C. § 5324(a)(3). A jury convicted her on all counts. The prosecutor argued for a prison sentence, emphasizing the suspicious nature of the smelly money, but the district judge rejected the argument and placed Abair on probation. The prosecutor also sought a forfeiture of the entire amount at issue, which required Abair to sell her new home. For some unknown reason, before trial Abair agreed not to fight the forfeiture if she was convicted. Based on the pretrial stipulation, the judge entered the requested forfeiture order, and Abair lost the full value of her home — about $67,000 — to the government.
Abair raises four arguments on appeal: (1) the indictment was multiplicitous; (2) the district court committed an evidentiary error; (3) the evidence was insufficient to convict; and (4) the forfeiture was excessive in violation of the Eighth Amendment. Three of these arguments can be summarily rejected. The district court cured the multiplicity problem by merging the counts at sentencing. The evidence was sufficient to convict, even though the structuring violation was technical and not connected to any criminal activity. And because Abair stipulated to the forfeiture, she waived the Eighth Amendment chai- *269 lenge, which but for the waiver might have had substantial merit.
That leaves the claim of evidentiary error. My colleagues hold that the judge should not have permitted the prosecutor to cross-examine Abair about specific instances of conduct bearing on her truthfulness under Rule 608(b)(1) and that the error warrants a new trial. I disagree. But my different take on this case should not be understood as an endorsement of the government’s decision to pursue Abair with every weapon in its arsenal. Perhaps there’s a good (or at least adequate) explanation for so disproportionate a deployment of criminal-justice resources. On the present record, however, this case shows every sign of being an overzealous prosecution for a technical violation of a criminal regulatory statute — the kind of rigid and severe exercise of law-enforcement discretion that would make Inspector Javert proud. Despite the prosecutorial overreaching, I find no legal error and so would affirm.
Rule 608(b)(1) permits a cross-examiner to attack the credibility of a witness by asking leading questions about specific instances of conduct “if they are probative of the [witness’s] character for truthfulness or untruthfulness.” FED. R. EVID. 608(b)(1). But the rule also prohibits the use of extrinsic evidence to prove the witness’s character for truthfulness. So the cross-examiner is effectively bound by the witness’s answer; if she denies the conduct or equivocates, the rule against admitting extrinsic evidence eliminates the opportunity to rebut. See United States v. Bynum, 3 F.3d 769, 772 (4th Cir.1993) (explaining that under Rule 608(b)(1), the “cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witnesses] denials”); see also United States v. Whitmore, 359 F.3d 609, 618 (D.C.Cir. 2004).
As with other evidentiary questions, the trial judge has broad discretion to permit or exclude cross-examination under Rule 608(b)(1). Appellate review is deferential; we look only for an abuse of discretion. United States v. Holt, 486 F.3d 997, 1000-01 (7th Cir.2007) (“We review the district court’s decision to limit the scope of cross-examination [under Rule 608(b) ] for an abuse of discretion.”); United State v. Dawson, 434 F.3d 956, 959 (7th Cir.2006) (“The important point is that the decision whether to allow a witness to be cross-examined [under Rule 608(b) ] ... is confided to the discretion of the trial judge.... ”). What this means in practice is that close cases are resolved in favor of upholding the judge’s exercise of discretion to control the admission of evidence at trial; reversal is appropriate only if no reasonable judge would make the same decision. See United States v. Chapman, 692 F.3d 822, 827 (7th Cir.2012); United States v. Vargas, 552 F.3d 550, 554 (7th Cir.2008) (“Only where no reasonable person could take the view adopted by the trial court will we reverse an evidentiary ruling.”).
Here, the judge allowed the government to cross-examine Abair about apparent falsehoods in her 2010-2012 FAFSA forms (federal financial-aid applications) and in her 2008 federal tax return. My colleagues conclude that this was an abuse of discretion because “the government did not demonstrate a sufficient reason to believe Abair herself actually lied” in these documents. Majority op. at 264. Respectfully, this conclusion sidesteps the applicable legal standard for Rule 608(b)(1) cross-examination and also the deferential standard of appellate review.
To cross-examine a witness under Rule 608(b)(1), the cross-examiner need only *270 have a good-faith factual basis to support the proposed line of questioning. See United States v. Holt, 817 F.2d 1264, 1274 (7th Cir.1987); see also United States v. Skelton, 514 F.3d 433, 444 (5th Cir.2008); Whitmore, 359 F.3d at 622; United States v. Cudlitz, 72 F.3d 992, 1001 (1st Cir.1996). That standard was met here. Copies of the relevant documents are in the record.[1] In each of Abair’s three FAFSA forms— for financial-aid years 2010, 2011, and 2012 — a zero appears on the line asking about her cash assets, and another zero appears on the line asking for the value of any investments. But other evidence in the case showed that during these years, Abair had substantial equity in her apartment in Russia, and after the property was sold, held a substantial sum of money— about $100,000 — in her Citibank Moscow account. In addition, on her 2008 federal tax return, filed jointly with her husband, Abair claimed a business loss of $6,566 from her work as a massage therapist based in part on vehicle expenses totaling $8,872, a seemingly implausible figure given the nature of the business.
Abair’s counsel vigorously objected to the government’s proposed cross-examination. After a lengthy sidebar, the judge overruled the objection and permitted the cross-examination to proceed, concluding that the documentary evidence established a good-faith basis for the prosecutor to ask Abair whether she provided false information in these financial filings. But the judge reminded the prosecutor that he could not use extrinsic evidence; if Abair denied that she lied on the documents, the government would be stuck with her answer. The judge also warned the prosecutor to keep the scope of his inquiry narrow.
Cross-examination resumed but proceeded clumsily and was interrupted by several additional objections. Abair denied that she lied and offered a plausible explanation for how the misleading information wound up in these documents. She testified that the online program for the FAFSA permitted her to skip the questions about her assets based on other answers she gave earlier in the form. (Her counsel speculates that the program entered the zeroes automatically.) She also testified that her husband completed their 2008 tax return and filed it electronically. She acknowledged giving him financial information about her massage business, but said that she neither saw nor signed the return before it was filed.
My colleagues credit Abair’s explanation and conclude that the cross-examination lacked a good-faith factual basis and should have been excluded. Majority op. at 264-66. This reasoning misapplies the governing legal standard and overlooks the deference owed to a trial judge’s evidentia-ry determinations.
The good-faith-basis standard for cross-examination under Rule 608(b)(1) is not a high bar; a “well[-]reasoned suspicion that a circumstance is true is sufficient.” Holt, 817 F.2d at 1274 (quoting United States v. Sampol, 636 F.2d 621, 658 (D.C.Cir.1980)). Importantly, although the inquiry into specific instances of conduct must have a basis in fact, the cross-examiner is not required to prove the underlying factual basis for his questions. See Skelton, 514 F.3d at 444.
It’s true that the documentary evidence in this case gave rise to competing inferences, but one permissible interpretation was that Abair provided false information *271 on these important financial filings. That’s a sufficient factual basis for the Rule 608(b)(1) cross-examination. To be sure, Abair disputed the government’s interpretation of the documentary evidence and provided a plausible explanation for how the misleading figures might have found their way into her FAFSA forms and tax return. My colleagues fault the government for “not pointing] to anything in the record supporting its theory in the face of Abair’s testimony and other indications that she simply exercised her option to skip inapplicable [FAFSA] questions about her assets.” Majority op. at 265. They also criticize the government for not “providing] any reason for doubting Abair’s testimony that she not only did not see the tax return but never even signed it because her husband filed it electronically.” Id. at 265.
But this reasoning overlooks that the prosecutor did not have to disprove Abair’s explanation before getting the green light to proceed with his cross-examination. All he needed to do was establish a good-faith factual basis to ask the questions; here, the documents themselves provided that good-faith basis. Nothing required the judge to credit Abair’s proffered explanation when ruling on the defense attorney’s objection. Even accepting the factual premise that the online FAFSA program permits applicants to skip certain questions and that Abair in fact did so, we can only speculate about whether the program fills in zeroes automatically or leaves the skipped questions blank. Abair’s explanatory speculation may be plausible, but there’s no evidence one way or another. Her FAFSA forms contain both blanks and zeroes. What we do know with some certainty is that nothing in the caselaw applying Rule 608(b) requires the cross-examiner to produce evidence to rebut the witness’s explanation before gaining the judge’s approval to cross-examine her on the subject. Nor was the government required to prove that Abair knowingly filed a false tax return as a precondition to cross-examining her about whether she inflated her claimed business expenses.
Simply put, the presence of a factual dispute about the specific instances of conduct does not defeat the cross-examiner’s good-faith factual basis to proceed with the cross-examination under Rule 608(b)(1). A shaky factual foundation may be a factor in the judge’s evaluation of the relative probative value and prejudicial effect of the cross-examination under Rule 403. But to justify exclusion under Rule 403, the evidence must be substantially more prejudicial than probative. See Fed.R.Evid. 403 (providing that “[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice”). Here, the judge made a specific finding that the government’s proposed cross-examination survived Rule 403 balancing.
That ruling was sound. The disputed issues at trial were Abair’s knowledge of the $10,000 reporting limit and her intent to evade it. On the witness stand, she denied that she knew about the currency-transaction limit at the time of the offense and denied any intent to structure her transactions to evade it. Because her credibility was key, so was the government’s Rule 608(b)(1) cross-examination.
As my colleagues have noted, providing false information on a financial-aid application or a tax return is “an archetype of conduct bearing on truthfulness.” Id. at 264. So the government’s proposed cross-examination was obviously highly probative. Of course, the prosecutor had to take the good with the bad; once the cross-examination was underway, he was stuck with Abair’s denial and her plausible *272 explanation for what appeared to be false information in her FAFSA forms and tax return. That she would deny lying and make an effort to explain the information did not require the judge to sustain the defense attorney’s objection and disallow the cross-examination, either under Rule 608(b)(1) or Rule 403.
Finally, the court’s holding fails to account for the deferential standard of review that applies to evidentiary determinations. Cross-examination under Rule 608(b)(1) always carries the risk that the witness will deny the prior conduct or try to explain it away. Sometimes this happens in response to the cross-examiner’s accusatory questions, and sometimes the witness is rehabilitated on redirect examination. Either way, the fact that the witness denies or plausibly explains the prior conduct isn’t a basis for the reviewing court to find that the trial judge abused his discretion in allowing the cross-examination in the first place. The standard of review is deferential for good reason; the trial judge is in a superior position to evaluate evidentiary disputes and must rule on the basis of the information available at the time the objection is made. The abuse-of-discretion standard of review guards against appellate judges substituting their own views based on hindsight. pound and confusing questions, but that doesn’t call into question the judge’s initial decision to overrule the defense attorney’s objection and allow the cross-examination to proceed. Defense counsel interposed additional objections; some were sustained, some questions were cut off or left unanswered, and the material accusatory questions were met with denials and explanations from Abair.
In short, I can find no reason to fault the district judge’s decision to permit this cross-examination or to criticize his refereeing of it once it was underway. Finding no error, I would affirm, although not without serious misgivings about the wisdom of this prosecution. It’s unclear to me how the interests of justice are served by saddling Abair with a felony conviction and forcing her to forfeit her home as punishment for a technical, trivial violation of the structuring statute. Without more, the government’s suspicions about the malodorous money do not support an inference that broader criminality was at work here. Abair has no criminal history, and at sentencing the judge noted that she is otherwise a responsible person, has a good employment history, is an excellent mother to her 11-year-old son, and has substantial community support. No doubt these observations contributed to the judge’s decision to place her on probation.
For the foregoing reasons, I respectfully dissent.[2]
When confronted with Abair’s objection, the trial judge’s obligation was simply to test the prosecutor’s good-faith factual basis for the proposed cross-examination. The judge did so here, conducting a proper inquiry under both Rule 608(b)(1) and Rule 403. The judge appropriately limited the scope of the cross-examination and closely monitored the prosecutor’s questions. True, the prosecutor asked com-

. The documents were not offered or admitted as evidence before the jury, consistent with the bar on the use of extrinsic evidence to prove character for untruthfulness. See Fed.R.Evid. 608(b)(1).

. Despite our disagreement about the legal issue under Rule 608(b)(1), my colleagues’ decision to reverse and remand for a new trial has the salutary effect of permitting a fresh exercise of prosecutorial discretion. The executive branch may choose to moderate its strict enforcement stance against Abair and resolve not to sink further resources into *273 prosecuting her. Under the circumstances, that might be the most prudent and just thing to do.